

**U.S. Department of Justice**

*United States Attorney
Eastern District of New York*

SC
F.#2004R00498

*One Pierrepont Plaza
Brooklyn, New York  11201*

*Mailing Address:*  147 Pierrepont Street
Brooklyn, New York  11201

March 30, 2005

**By Facsimile & Hand Delivery**

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Anthony Louis Cotroneo
     Criminal Docket No. 04-325 (ERK)

Dear Judge Korman:

  The above-referenced defendant is scheduled to be sentenced on April 1, 2005, at 12:00 p.m.  In a letter dated March 23, 2005, the defendant asks the Court to impose a sentence below the applicable range under the United States Sentencing Guidelines.[1]  The government submits this letter in opposition to the defendant's request.

### BACKGROUND

  In early December 2003, the defendant Cotroneo began conversations via the internet with an undercover postal agent in which Cotroneo expressed an interest in purchasing child pornography.  After several discussions, Cotroneo ordered two videos containing child pornography.  Cotroneo arranged to have the videos delivered to the home of his co-defendant Farouk Amad.

---

 [1] Actually, it is not readily apparent from defendant's submission exactly what relief he is seeking other than "that the Court sentence Anthony Cotroneo as leniently as possible."  Def. Brf. at 3.  However, because the defendant challenges certain Guidelines calculations, id. at 1, and refers in passing to a "downward departure" and "diminished capacity," id. at 3, the government presumes the defendant is requesting sentence below the Guidelines range established in the Pre-Sentence Report ("PSR").

The defendant further used Amad's name and address in the return address portion of the envelope when he mailed payment for the videos to the undercover agent.

On March 3, 2004, after several more communications regarding the delivery of the videos, and after investigation revealed that Cotroneo was in fact the purchaser and intended recipient of the videos, a search warrant for Cotroneo's residence was executed. As a result, agents seized a computer, DVDs, VHS tapes, and printed images of child pornography that had been downloaded on his computer. After being placed under arrest and receiving <u>Miranda</u> warnings, Cotroneo made a full confession and stated that when he ordered child pornography in the past, as he did in this case, he had it delivered to his friend Amad's residence to prevent his wife from finding out about it.

The National Center for Missing and Exploited Children ("NCMEC") confirmed that 13 of the printed images in Cotroneo's home contained pictures of known child victims. Forensic analysis of the computer seized from Cotroneo's home revealed over 900 images of child pornography many of which also depicted known child victims.

On November 23, 2004, the Cotroneo pled guilty to possession child pornography that had been transported by means of a computer in violation of 18 U.S.C. § 2252A(a)(5)(B).

## **ARGUMENT**

The defendant requests that the Court impose a sentence lower than that suggested by the Guidelines for a variety of reasons.[2] These arguments are without merit, and the government respectfully submits that, in light of the factors set forth in 18 U.S.C. § 3553(a), a Guidelines sentence is reasonable by its very nature.

---

[2] The defendant is correct that the plea agreement does not contain a two-level increase in offense level pursuant to § 2G2.4(b)(2), just the five-level increase pursuant to § 2G2.4(b)(5)(D). It is the government's understanding that the two sections resulted in double-counting and that the Sentencing Commission remedied the problem by deleting an increase pursuant to § 2G2.4(b)(2) in the 2004 version of the Guidelines. Thus, it is the government's position that only the increase pursuant to § 2G2.4(b)(5)(D) is merited.

3

The government recognizes that, pursuant to the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), the Guidelines are now advisory rather than mandatory, id. at 764-65, and that a sentencing court thus has the authority to fashion a reasonable and appropriate sentence in a given case. However, the Supreme Court further held in Booker that the sentencing court must still take the Guidelines into account, id., and for this reason, the government respectfully submits that this Court must assess whether the defendant has made out the grounds for a sentencing reduction under the standards set forth in the Guidelines.

Here, the defendant asks that this Court impose a sentence below the applicable Guidelines for a myriad of reasons, none of which should compel the Court to do so.

Depictions of Sadism, Masochism or Violence

Child pornography possessed by the defendant included depictions of sadism and violence. As such, a four-level enhancement to the base offense level is merited.

Pursuant to § 2G2.(b)(4) if the offense involved material that portrays sadistic or masochistic conduct, or other depictions of violence, the offense level is increased by four levels. As noted in the PSR, material Cotroneo possessed contained numerous depictions of sadism and violence and, as a result, the four-level enhancement pursuant to § 2G2.(b)(4) was applied. See PSR ¶ 22, 43. Cotroneo argues that although he did in fact possess pornography that contained sadistic images, he should not receive the four-level adjustment because "his interest in sadism is limited to 'spanking' type behavior as opposed to more brutal portrayals." Def. Br. at 1. Cotroneo further claims that he "did not know in advance that [the materials] contained violence or sadistic conduct until he pushed the button and the images were downloaded." Id.[3]

First, with respect to Cotroneo's intent, according to the PSR, "the defendant describe[s] himself as a 'sex addict' who compulsively masturbates and collects pornographic books,

---

[3] Cotroneo further argues that the descriptions of the videos he ordered from the undercover postal inspector did not include reference to sadism, nor did he indicate an interest in such matter to the agent. Of course, Cotroneo never actually received the videos from the agent and they are not the materials Cotroneo actually possessed that contained the sadistic images.

magazines, and videos, particularly those featuring girls between the ages of nine and 18, engaging in lesbian and *sadomasochistic behavior*." PSR ¶ 75 (emphasis added). Cotroneo clearly has a self-avowed interest in sadistic images and characterizes himself as collector of such.

In any event, regardless of Cotroneo's protests regarding the degree of sadism that appeals to him, the relevant inquiry should not be what the defendant was interested in but, rather, what he *possessed*. See United States v. Richardson, 238 F.3d 837, 840 (7th Cir. 2001) (upholding enhancement for depiction of sadistic and masochistic images where defendant downloaded material in bulk from sources that did not indicate nature of violence, sadism or masochism depicted, concluding that "liability for receiving violent child pornography is strict"). Whether Cotroneo is interested in mildly sadistic images instead of brutally sadistic images is irrelevant because the images he possessed were patently sadistic and thus merit the four-level increase. See, e.g., PSR ¶ 22 ("This is an extremely brutal series involving bondage and sadistic behavior. The abuse of this child was videotaped over several years. . . . The girl's body is tied with rope and she is often gagged and blindfolded. She is tied to a bench while being sexually assaulted. . . . She is also blindfolded, hanging from ceiling, and being whipped and assaulted. A red phallic-shaped object is inserted in her anus."); United States v. Caro, 309 F.3d 1348 (11th Cir. 2002)(concluding that "pictures depicting young children being subjected to sexual acts that would have to be painful" and "pictures of minors in bondage" are "sadistic images"); see also United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996)(affirming district court's conclusion that insertion of unidentified object into anus of boy around 8-9 years of age was "sadistic" within the meaning of the Guidelines).

Cotroneo does not dispute that the material he possessed contained images of sadism and thus there should be no dispute that the four-level adjustment is eminently appropriate.

<u>Collector of Child Pornography, Not a Child Molester</u>

A downward departure on the grounds that the defendant did not commit other crimes is inappropriate. The calculation of Cotroneo's sentence is correctly based on factors set forth in § 2G2.4 and no departure from the resulting offense level is merited.

The relevant Guideline for one who possesses child pornography and has been convicted of violation 18 U.S.C. §

2252A(a)(5)(B) is § 2G2.4, entitled "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." The offense level determined under that section should govern a sentence in the heartland of cases. Cotroneo argues that because he has not engaged in child molestation, and "has not been involved in any manner except as a viewer," his sentence should be lowered. Def. Br. at 2. Cotroneo points out that he was in a "vulnerable position" as a school teacher and drama director of young children but he "was never a threat or danger to any child" despite "numerous opportunities over the years." Id.

  A downward departure is not a vehicle by which to impose a lower sentence than called for because the defendant failed to commit another, more heinous crime. "Defendant knowingly possessed more than 350 images of child pornography. Whether that was the only crime that Defendant committed is immaterial to deciding whether his conduct fell within the heartland of the crime of possession." See United States v. Barton, 76 F.3d 499, 503 (2nd Cir. 1996)(reversing downward departure for defendant who received child pornography but had not sexually abused children, or committed other crimes relating to child sexual abuse, holding that "[i]nasmuch as the offense to which Barton pleaded guilty (receipt of child pornography) did not contemplate sexual abuse of children, we find that he is not entitled to a departure merely because he did not commit and additional crime"); see also United States v. Stevens, 197 F.3d 1263, 1269 (9th Cir. 1998)(reversing downward departure where defendant possessed child pornography but did not engage in any other proscribed conduct relating to child sexual abuse); United States v. Wind, 128 F.3d 1276, 1278 (8th Cir. 1977)(reversing downward departure and stating that defendant was "not entitled to a downward departure on the ground that he did not commit, or have the tendency to commit, a worse crime"); United States v. Artim, 944 F. Supp. 2d 363, 368 (D.N.J. 1996)(holding that defendant who was convicted of possessing child pornography was not entitled to downward departure on the grounds that he "never actually sexually abused children" because "a defendant is not entitled to a downward departure simply because he did not commit another crime")(citing United States v. Barton, 76 F.3d 499 (2d Cir. 1996)). Cotroneo's argument "that he never acted out his fantasy in any manner throughout his long career" as a schoolteacher no more provides a basis for a downward departure than would that of a defendant convicted of bank robbery who sought a downward departure because he didn't shoot anyone or take anyone hostage during the robbery.

  Whether or not Cotroneo is a child molester is irrelevant; Cotroneo has been charged with, and pled guilty to,

6

possessing child pornography.  As the Court in <u>Stevens</u> stated, "defendant's failure to engage in *additional* conduct relating to the sexual abuse of children is an impermissible ground for granting a downward departure when sentencing for the crime of possessing child pornography."  <u>Stevens</u>, 197 F.3d at 1270. Cotroneo's punishment should be determined with reference to the crime he committed, not based on self-serving statements about the crimes he failed to commit despite having ample opportunity to do so.

<u>Diminished Capacity</u>

As the Sentencing Guidelines make clear, a defendant's mental condition is not ordinarily relevant for sentencing. U.S.S.G. § 5H1.3.  However, as set forth in § 5K2.13 of the Guidelines,

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.  If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

In turn, the Guidelines define "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  U.S.S.G. § 5K2.13, Application Note 1.

Thus, in order to qualify for a downward departure based on reduced mental capacity, a defendant must show a <u>significant</u> reduction in his mental capacity that impairs his judgment or ability to control his behavior.  A mere showing of

7

some reduced mental capacity is insufficient. <u>See</u>, <u>e.g.</u>, <u>United States v. Ventrilla</u>, 233 F.3d 166, 169 (2d Cir. 2000) (per curiam) ("To establish diminished capacity . . . a defendant [must establish] by a preponderance of the evidence that he suffers from 'reduced mental capacity' and that a 'causal link [exists] between that reduced capacity and the commission of the charged offense.'" (citations omitted)).  Furthermore, in order to be eligible for a downward departure based on diminished mental capacity, the defendant must demonstrate by a preponderance of the evidence not only that he has a "significantly reduced mental capacity," but also that a causal link exists between that reduced mental capacity and the commission of the offense. <u>See</u> <u>United States v. Silleg</u>, 311 F.3d 557, 564 (2d Cir. 2002); <u>Ventrilla</u>, 233 F.3d at 169; <u>United States v. Prescott</u>, 920 F.2d 139, 146 (2d Cir. 1990). Additionally, the Guidelines state that "the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." U.S.S.G. § 5K2.13.  The Guidelines do not allow for any downward departure if the reduced mental capacity did not contribute to the defendant's commission of the offense. <u>See</u> <u>United States v. Leandre</u>, 132 F.3d 796, 801 (D.C. Cir. 1998).

In this case, the defendant has submitted a letter from social worker Robert V. Simone which states that Cotroneo has, *inter alia*, a "compulsive sexual disorder." Simone Ltr. at 1. However, Simone's letter is largely conclusory, discusses mostly the status of Cotroneo's treatment and fails to establish, or even address, the suggestion that the defendant suffered from a significantly reduced mental capacity and that the defendant's purportedly diminished capacity caused him to commit the instant crime.  The same can be said for the letter written by psychotherapist Jennifer A. McCarthy. Counsel's avowal that Cotroneo is "psychologically impaired and suffers from diminished capacity" does not make it so.  <u>See</u> <u>United States v. Motto</u>, 70 F. Supp. 2d 570 (E.D. Pa 1999)(denying downward departure despite diagnosis of personality disorder because defendant's mental capacity was not "reduced"); <u>United States v. Lake</u>, 53 F. Supp. 2d 771, 785-86 (D.N.J. 1999)(denying downward departure where no evidence of cognitive or volitional dysfunction sufficient to warrant finding of diminished capacity).

As set forth above, the Guidelines provide that a downward departure is only appropriate when the reduction in the defendant's mental capacity is "significant."  In this case, there is no indication that the defendant has an impaired ability to "understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason." U.S.S.G. § 5K2.13,

8

Application Note 1.  In fact, to the contrary, the defendant argues in his sentencing submission that he exercised his power of reason with respect to wrongfulness by keeping "separate his fantasy world from reality" and restraining himself from harming the young children under his care.  His cognitive and volitional abilities thus appear intact.  There is absolutely no evidence that the defendant's purportedly reduced mental capacity made him unable to control behavior that he knew was wrongful.  See Silleg, 311 F.3d at 564.[4]

---

[4] Cotroneo cites to United States v. Brandon Michael Lipshitz,185 F.3d 26 (2004) N.Y.L.J. (sic) in support of its argument for a downward departure based on diminished capacity.  The government believes the case to which he refers is United States v. Brandon Michael Lifshitz,98 Fed. Appx. 26, 2004 WL 1088969 (2d Cir. 2004) and a companion opinion, United States v. Brandon Michael Lifshitz,369 F.3d 173 (2d Cir. 2004), opinions that deal solely with an appeal of the conditions of the defendant's probation and do not address at all, let alone indicate "no problem with," the granting of a departure for diminished capacity.  The opinions should not, therefore, inform the Court's determination of Cotroneo's sentence.

## CONCLUSION

      For the reasons set forth above, the government respectfully requests that the defendant be sentenced within the Guidelines range of imprisonment.

                              Respectfully submitted,

                              ROSLYNN R. MAUSKOPF
                              United States Attorney


                     By:   /s/ Sarah Coyne
                              Sarah Coyne
                              Assistant U.S. Attorney
                              (718) 254-6299

cc:  Richard I. Rosenkranz, Esq.
     Mark Gjelaj, United States Probation
     Clerk of the Court (ERK)